### HUG v. LAKEWOOD ENGINEERING CO.

(District Court, N. D. Ohio. E. D. May 17, 1923.)

No. 835.

1. **Patents ⬚328—1,421,237, for road subgrader, held invalid and not infringed if valid.**

   The Hug patent, No. 1,421.237, for subgrading machine used in road making, *held* invalid for want of invention, in view of the prior art, and, if valid, so narrowly limited as not to be infringed.

2. **Patents ⬚16—Putting wheels on machine to make it portable not invention.**

   Putting wheels under a subgrading machine used in road making to make it portable did not involve invention.

3. **Patents ⬚25—No invention in transferring devices from other road-making machines to subgrader to accomplish same result.**

   Transferring wheels, crank axle, tongue, lever attachments, and retaining latch from other road-making machines to a particular subgrader, when used for precisely the same purpose and accomplishing substantially the same result, did not involve invention.

In Equity. Suit by Christian J. Hug against the Lakewood Engineering Company. Bill dismissed.

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James L. Hopkins, of St. Louis, Mo., and Hull, Brock & West, of Cleveland, Ohio, for plaintiff.

Thurston, Kwis & Hudson, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. [1] This is the usual patent infringement suit, with the usual defenses of invalidity and noninfringement. It is based on United States letters patent No. 1,421,237, issued to Christian J. Hug, June 27, 1922, on application filed October 16, 1920. It covers a device known as a subgrading machine, customarily used in road-making. Defendant is and has been since 1918 making a similar subgrading machine under United States letters patent No. 1,268,925, issued to E. G. Carr June 11, 1918, on application filed March 7, 1917. In the latter part of 1919 or the early part of 1920, long prior to Hug's application date, defendant had improved its subgrader so that it embodied all the features found in Hug's patent, except the wheels, crank axle, and tongue, presently to be described. In 1923 defendant added wheels to the Carr device, and the charge of infringement is based specifically upon this addition.

These structures are so simple in their elements and principle of operation, and the issues lie within such a narrow compass, that no detailed description of the respective structures is required. They are so similar that it would seem that Hug must have used Carr as a basis for his invention, despite his denial. If this is not true, then he, like Carr, probably used the familiar road scrapers and graders of the pre-existing art. The only change or addition made by Hug to defendant's commercial Carr device consists in adding a pair of wheels, a crank axle to raise and lower the grader, a tongue of the ordinary wagon type attached to the crank axle, with ordinary wagon hounds, and a retaining latch to hold the tongue in a fixed position when the wheels are lowered and the scraper is raised. The crank axle is added for its usual and normal purpose of enabling a structure to be raised and lowered by means of wheels attached to the axle. The wagon tongue and hounds are added for the usual and normal purpose for which they have been used in wagons since a time whereof the memory of man runneth not to the contrary. Normally these additions were made for the purpose only of making the grader portable. In the operation of the subgrader, they perform the same function and accomplish the same result as the pedestal and levers of the Carr device, or of their modified equivalents in defendant's commercial structure.

Subgraders in road-making are operated by some form of traction, usually a traction road-roller. It is desirable to turn the grader around and operate it in both directions. It is also desirable to turn it halfway around so as to permit traffic to pass while in operation. In the Carr device, the pedestal and levers permitted both of these operations. It is claimed for the wheels of the Hug device that the subgrader may be wheeled transversely to one side of the road to clear the other side to permit traffic to pass, and this, on the hearing, is the only material advantage claimed for it. That this accomplishes the old result in any substantially better way may well be doubted. The presence of the traction road roller in the center of the road, and the limit

upon transverse movement due to the circumference of the wheels, the header forms, or embankments, make it very questionable whether any greater clearance for traffic can thus be obtained. If this is not a new or different function and result, then, aside from the portability obtained, I perceive no new or different result or function accomplished by Hug's additions to Carr.

[2] Defendant contends that putting wheels under a subgrader so as to make it portable does not involve the inventive faculty. This is undoubtedly true. Defendant also contends that the wheels, crank axle, and tongue are mere additions to a subgrader and perform no function in connection with the other elements of the subgrader; and hence a mere aggregation and not a true combination in the patentable sense is produced. Obviously, these additions perform no function in connection with the other elements of the subgrader while it is performing its normal function of a road grader. It is no more a part of the combination making up the grader than is the traction road roller which supplies the power to operate it. It is undoubtedly true that a mere aggregation is produced, unless it can be said that the necessity for getting the subgrader frequently and quickly out of the way of traffic can be said to be an essential function of a practicable road grader. If Hug's additions are not merely a double use of old elements, it certainly follows that the question of patentability is brought down to an exceedingly narrow basis, and that Hug's patent claims can be sustained, if at all, only for his specific construction.

My opinion is that in view of the prior art, no invention can be found in the Hug device. As already stated, all of its elements are found in, if not copied from, the Carr patent and defendant's commercial structure, with the exception of the crank axle and wheels, and the wagon tongue and retaining latch. These elements are all old in the prior art, and were used for the same purpose. In Baker's treatise on Roads and Pavements, published in 1916 (page 101), is illustrated a wheel scraper with a crank axle for raising and lowering the scraper. The yoke of the handle or lever is attached to the crank axle in the same manner and position as is Hug's wagon tongue. In United States letters patent No. 659,867, dated October 16, 1900, issued to F. A. Hetherington, are found a crank axle and wheels in a paving tool, with means to raise and lower the paving tool. It is true the wheels are removed when the paving tool is in use, and applied only when it is not in use, and portability is desired. In United States letters patent No. 80,155, dated July 21, 1868, to E. B. Driskell, is found an improved road scraper with wheels, a crank axle, and handles to raise and lower the scraper. The wheels are not removable, and the handles perform the lever function of raising and lowering the scraper. In United States letters patent No. 358,179, dated February 22, 1887, issued to T. Willsea, for a ditching machine, are also found wheels, a crank axle, handle, and lever means for raising and lowering the ditcher. In United States letters patent No. 941,929, dated November 30, 1909, issued to W. Kaiser, for a road and land-leveling machine, are found wheels, a crank axle, and tongue or lever for raising and lowering the scraper. It has a retaining latch, the substantial equivalent of Hug's

retaining latch, used to perform precisely the same function. The lever means for raising and lowering the scraper are more similar to defendant's present construction than to Hug. In all of these several disclosures, the function and purpose of the wheels, crank axle, tongue, and levers are the same as in both Hug's and defendant's devices.

[3] In view of the teachings and disclosures of this prior art, no invention was required to transfer therefrom the wheels, crank axle, tongue, lever attachments, and retaining latch to Hug's subgrader. They perform no new and different function in Hug's combination. They were adopted and used for precisely the same purpose, and accomplished substantially the same result.

Moreover, if the claims of Hug's patent are not invalid, they must be so narrowly construed and limited that defendant's structure does not infringe. Defendant, for the season of 1923, added to its device what it calls "jack wheels." It does not use a crank axle nor the wagon tongue with the retaining latch. In Hug, the method of operation in raising or lowering the subgrader is to release the retaining latch and revolve the wheels. In defendant's device, power is positively applied by means of a bell crank, spiral spring, and lever to raise and lower the grader. The wheels perform in this operation the same function as the pedestal of Carr's patent. Defendant's raising and lowering means, even with the wheel included, are an evolution of its means previously developed and used and are more nearly analogous to Kaiser than to Hug. More ingenuity beyond ordinary mechanical skill was required to devise defendant's means over Carr and Kaiser than was required to add Hug's means either to Carr, Kaiser, or defendant's commercial structure. In view of the specific and limited nature of the invention, if any, embodied in Hug's subgrader, it cannot be said that defendant is using his means or their substantial equivalent. If Hug is permitted to claim and use his device without being charged with an infringement of Carr and Kaiser, defendant is equally entitled to use its present device without being held to infringe Hug.

For the foregoing reasons, plaintiff's bill will be dismissed, at his costs.